UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| SHEILA CRAWFORD,<br><br>        Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>        Defendant. | No. ED CV 15-1436-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on July 17, 2015, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before the undersigned Magistrate Judge on August 28, 2015, and September 28, 2015. Pursuant to the Court's Order, the parties filed a Joint Stipulation on March 18, 2016, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on June 12, 1968. [Administrative Record ("AR") at 182.] She has past relevant work experience as a general clerk, and as an administrative assistant. [AR at 23, 67.]

On June 22, 2012, plaintiff filed an application for a period of disability and DIB, alleging that she has been unable to work since June 22, 2012. [AR at 13, 182-84.] After her application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 13, 110.] A hearing was held on December 3, 2013, at which time plaintiff appeared with a non-attorney representative, and testified on her own behalf. [AR at 13, 45-74, 167.] A vocational expert ("VE") also testified. [AR at 61-73.] On January 24, 2014, the ALJ issued a decision concluding that plaintiff was not under a disability from June 22, 2012, the alleged onset date, through January 24, 2014, the date of the decision. [AR at 13-24.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 170.] When the Appeals Council denied plaintiff's request for review on May 29, 2015 [AR at1-6], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's

decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

### A.  THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id.

1  If the claimant has a "severe" impairment or combination of impairments, the third step requires
2  the Commissioner to determine whether the impairment or combination of impairments meets or
3  equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404,
4  subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If
5  the claimant's impairment or combination of impairments does not meet or equal an impairment
6  in the Listing, the fourth step requires the Commissioner to determine whether the claimant has
7  sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled
8  and the claim is denied.  Id.   The claimant has the burden of proving that she is unable to
9  perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a
10  prima facie case of disability is established.  Id.  The Commissioner then bears the burden of
11  establishing that the claimant is not disabled, because she can perform other substantial gainful
12  work available in the national economy.  Id.  The determination of this issue comprises the fifth
13  and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at
14  828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since June 22, 2012, the alleged onset date.[1]  [AR at 15.]  At step two, the ALJ concluded that plaintiff has the severe impairments of asthma; restless leg syndrome; rheumatoid arthritis; osteoarthritis; degenerative disc disease of the lumbar spine, status-post fusion surgery; and degenerative disc disease of the cervical spine.  [Id.]  At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing.  [AR at 17.]  The ALJ further found that plaintiff retained the residual

---

[1]  The ALJ concluded that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2017.  [AR at 15.]

4

functional capacity ("RFC")[2] to perform light work as defined in 20 C.F.R. § 404.1567(b):[3]

> [S]he can never climb ladders, ropes, and scaffolds; she can occasionally use ramps and stairs, balance, stoop, kneel, crouch, and crawl; she should only have occasional exposure to environmental irritants, such as fumes, odors, dust, and gases; she should only have occasional exposure to poorly ventilated areas; she is limited to no to rare use of moving machinery and walking on uneven terrain; she is limited to no to rare exposure to unprotected heights.

[Id.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is able to perform her past relevant work as a general clerk, and as an administrative assistant, as generally performed. [AR at 23-24, 67-68.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of June 22, 2012, through January 24, 2014, the date of the decision. [AR at 24.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that (1) the ALJ erred when she rejected plaintiff's subjective symptom testimony; and (2) the Appeals Council failed to properly consider the November and December 2014 opinions of plaintiff's examining orthopedic surgeon, Ralph N. Steiger, M.D. [Joint Stipulation ("JS") at 4.] As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

---

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

**A.    CREDIBILITY**

Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting her subjective symptom testimony. [JS at 3-7, 18-19.]

As noted by the ALJ in his decision, plaintiff alleged that she is unable to work due to asthma, disorders of the lumbar and cervical spine, polyarthritis, and restless leg syndrome, and that due to her impairments she can sit for only 20 minutes, and stand for 10-15 minutes, and needs to rotate positions; she has difficulty concentrating and has to elevate her legs; her current treatment consists of using heating and cooling pads, lying down half the day, rotating positions, and taking medications; and her medications cause fatigue, upset stomach, drowsiness, jitteriness, constipation, and irritable mood. [AR at 18 (citations omitted).] In her September 1, 2012, Exertion Questionnaire, plaintiff reported that she has difficulty lifting, carrying, and sitting, and stated that she would need surgery for her neck at some point. [Id. (citing AR at 205, 207).] In her September 1, 2012, Asthma Questionnaire, plaintiff reported that she has asthma attacks almost daily, depending on the air quality, and that she had been to the emergency room and hospitalized for asthma attacks. [Id. (citing AR at 208, 209).]

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 1036 (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if the claimant meets the first test, the ALJ may reject the claimant's testimony about the severity of her symptoms "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). Factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v.

6

Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014); 20 C.F.R. § 404.1529(c).

Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ did not find "affirmative evidence" of malingering [see generally AR at 17-23], the ALJ's reasons for rejecting a claimant's credibility must be specific, clear and convincing. Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)); Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Burrell, 775 F.3d at 1138 (quoting Lester, 81 F.3d at 834) (quotation marks omitted). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" Brown-Hunter, 806 F.3d at 493 (quoting Bunnell, 947 F.2d at 345-46). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Bunnell, 947 F.2d at 346. As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

The ALJ found plaintiff's allegations "concerning the intensity, persistence and limiting effects of her symptoms" to be "less than fully credible." [AR at 23.] In discounting plaintiff's credibility, the ALJ appears to rely upon the following: (1) the objective evidence fails to support plaintiff's allegations; (2) plaintiff's pain and other symptoms are effectively controlled with conservative treatment; and (3) plaintiff failed to follow treatment recommendations. [AR at 17-23.]

### 1.  Objective Medical Evidence

The ALJ found that the objective evidence does not support plaintiff's subjective symptom allegations. [AR at 23.] The ALJ concluded that plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms; however, [plaintiff's] statements

concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." [AR at 19.] Then, after summarizing the medical evidence of record [AR at 19-23], the ALJ stated that plaintiff's "subjective complaints are less than fully credible and the objective medical evidence does not support the alleged severity of the symptoms." [AR at 23.]

While a lack of objective medical evidence supporting a plaintiff's subjective complaints cannot provide the only basis to reject a claimant's credibility (see Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)), it is one factor that an ALJ can consider in evaluating symptom testimony. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can consider in his credibility analysis."); accord Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Here, the ALJ reviewed the medical evidence, and stated her conclusions that the RFC assessment was "supported by the evidence as a whole," and that plaintiff's subjective complaints are "less than fully credible and the objective medical evidence does not support the alleged severity of symptoms." [AR at 23.] As the Ninth Circuit recently held, "an ALJ's 'vague allegation' that a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific finding in support' of that conclusion, is insufficient." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014) (citation omitted). The "ALJ must identify the testimony that was not credible, and specify 'what evidence undermines the claimant's complaints.'" Id. (citation omitted); Brown-Hunter, 806 F.3d at 493. Here, the ALJ did not identify the testimony she found not credible and "link that testimony to the particular parts of the record" supporting her non-credibility determination. Brown-Hunter, 806 F.3d at 494. In short, "[t]his is not the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited," nor can the error be found harmless. Id. at 493 (citing Treichler, 775 F.3d at 1103, Burrell, 775 F.3d at 1138) (rejecting the Commissioner's argument that because the ALJ set out his RFC and summarized the evidence supporting her determination, the Court can infer

that the ALJ rejected the plaintiff's testimony to the extent it conflicted with that medical evidence, because the ALJ "never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony").

Moreover, plaintiff argues -- and the Court agrees -- that the ALJ's finding is not based on a complete review of the relevant evidence in the record as the ALJ summarized only those portions of the record that bolstered her findings and "conveniently ignored the countless notations throughout the record which supported [plaintiff's] complaints of pain." [JS at 4-5 (citing AR at 208, 262, 270-71, 293, 296, 299, 303, 391, 395, 404, 423, 425, 428, 437, 445, 469, 476, 477).] An ALJ may not cherry-pick evidence to support the conclusion that a claimant is not disabled, but must consider the evidence as a whole in making a reasoned disability determination. Holohan v. Massanari, 246 F.3d 1195, 1207 (9th Cir. 2001) (concluding that the ALJ's basis for rejecting the treating physician's medical opinion was not supported by substantial evidence because the ALJ "selectively relied on some entries . . . and ignored the many others that indicated continued, severe impairment").

Accordingly, this was not a specific, clear and convincing reason to discount plaintiff's subjective symptom statements. Moreover, even assuming that the objective evidence fails to support plaintiff's subjective symptom allegations, this reason by itself is not a sufficient basis for discrediting plaintiff's testimony and, as discussed below, the Court finds that the ALJ's other reasons for discounting plaintiff's credibility also were not specific, clear and convincing.

### 2. Conservative and Effective Treatment

The ALJ also discounted plaintiff's allegations based on the fact that despite "some positive clinical and diagnostic findings," plaintiff was treated conservatively for her impairments, and the "conservative treatment methods appear effective in controlling" her symptoms. [AR at 18.]

An ALJ may properly rely on the fact that only routine and conservative treatment has been prescribed. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). "Conservative treatment" has been characterized by the Ninth Circuit as, for example, "treat[ment] with an *over-the-counter pain medication*" (see, e.g., Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (emphasis added);

9

1 Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that the ALJ properly considered the plaintiff's use of "conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset")), or a physician's failure "to prescribe . . . any serious medical treatment for [a claimant's] supposedly excruciating pain." Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999). In this case, however, plaintiff has been treated with prescription pain medications, including narcotics such as vicodin, oxycodone, Norco, and morphine. [See AR at 400, 425, 427, 428, 431, 433.] Plaintiff received chiropractic treatment, acupuncture, and physical therapy in the past, which had not been effective. [AR at 425.] Additionally, plaintiff's pain management doctor recommended lumbar facet joint injections and, although plaintiff scheduled the procedure but cancelled it "due to being apprehensive about the procedure" [AR at 429], the fact that plaintiff has been recommended to receive spinal injections to help control her pain is relevant for purposes of determining whether treatment has been "conservative." See Meanel, 172 F.3d at 1114 (stating that a physician's *failure* "to prescribe . . . any serious medical treatment for [a claimant's] supposedly excruciating pain" may be evidence of conservative treatment). Based on this record, the Court cannot not find that the ALJ's conclusion that plaintiff's treatment history -- which also included two lumbar surgeries in the past[4] -- has been conservative in nature, is supported by the record.

With regard to the ALJ's finding that plaintiff's medications effectively controlled her symptoms, the ALJ found that plaintiff's asthma and restless leg syndrome were both controlled with medication [AR at 18 (citations omitted)] -- a finding not contested by plaintiff, whose

---

[4] The ALJ stated that plaintiff's return to work after her two lumbar surgeries, which were performed in 2000 during a one-month hospitalization, "suggests that [plaintiff's] condition improved." [AR at 23.] While plaintiff's condition may have improved at some point after the surgery, and for some period of time, the ALJ fails to provide any logical connection between any improvement in 2000 when plaintiff returned to work, and plaintiff's condition more than twelve years later, for which, as admitted by the ALJ, the records from the alleged onset date onwards show "some positive clinical and diagnostic findings." [AR at 18.]

1 arguments focus on her pain complaints.[5] [See JS at 3-7.] With regard to plaintiff's pain allegations, the ALJ stated that "plaintiff's pain management doctor indicated that [plaintiff's] current medications appeared to control her symptoms enough to 'pursue activities of daily living without adverse events or aberrant drug behavior.'" [AR at 22-23 (citing AR at 446, 450).] However, the ALJ only partially quoted the physician's April 29, 2013, statement, which in relevant part states:

> The patient will have her medication refills and we'll see her in followup in 12 weeks. *The medication should allow adequate analgesia to allow the patient to pursue activities of daily living without adverse events or aberrant drug behavior.* The patient is not to drive if having any untoward effects from medications.

[AR at 446 (emphasis added); see also AR at 450 (July 11, 2013, treatment note).] The Court agrees with plaintiff that both the April 29, 2013, and the July 11, 2013, notations -- which were written as part of the pain management doctor's assessment plan for plaintiff -- do not reflect the *efficacy* of plaintiff's pain medication, only the hoped-for results, including a lack of side effects at the dosage prescribed. [JS at 6 (citing AR at 446, 450).]

Indeed, the ALJ also appears to selectively rely on those treatment notes that indicate plaintiff felt her medication was helping. For instance, the ALJ states that plaintiff told her pain management doctor that her "symptoms are controlled." [AR at 19 (citing AR at 445).] In full, however, the relevant portion of that treatment note states: "The symptoms are reported as being severe [and] occur constantly. The location is lumbar. She states the symptoms are controlled. . . . The patient states that her pain is unchanged she has lumbar pain radiating down both legs." [AR at 445.] Similarly, the ALJ refers to three other treatment notes in the record for the proposition that plaintiff's pain is controlled with medication, each of which also qualifies that statement in some way. [See, e.g., AR at 262 (the pain is worsening, persistent, or radiating), AR at 355 (plaintiff has "some reduction of pain with norco"), AR at 448 (the lumbar symptoms are "severe" and "occur constantly," and although the "medication controls" her pain, it "causes her

---

[5] To the extent the ALJ implies that plaintiff's treatment for asthma and restless leg syndrome was "conservative" in nature, the ALJ failed to articulate what, if any, additional treatment was currently recommended or available for these impairments.

to be somewhat sleepy," although "a lower dose does not relieve her pain").] As previously discussed, an ALJ may not cherry-pick evidence to support the conclusion that a claimant is not disabled, but must consider the evidence as a whole in making a reasoned disability determination. Holohan, 246 F.3d at 1207 (concluding that the ALJ's basis for rejecting the treating physician's medical opinion was not supported by substantial evidence because the ALJ "selectively relied on some entries . . . and ignored the many others that indicated continued, severe impairment").

In short, the ALJ's finding that plaintiff's medication regimen was conservative and effective was not a specific, clear and convincing reason for discounting plaintiff's credibility.

### 3. Failure to Follow Treatment Recommendations

The ALJ also noted that although plaintiff's doctors recommended that she engage in more activity [see, e.g., AR at 19 (citing AR at 396)[6]], plaintiff "testified that she does not exercise and she does nothing around the house." [AR at 19; see also AR at 56).] The ALJ opined that "[t]his demonstrates a possible unwillingness to do what is necessary to improve her condition." [AR at 19.]

Again, however, the ALJ has selectively relied on testimony taken out of context, as plaintiff actually testified that she does not exercise because "it hurts too much," and "it's hard" to do household chores such as the dishes because she "find[s] it[] hard to lift them in and out of the sink or bend down to the dishwasher." [AR at 56, 57.] Indeed, the ALJ does not otherwise support her conclusory finding with any evidence in the record, nor does she find plaintiff to be a malingerer. As such, the ALJ's unsupported observation relating to plaintiff's failure to exercise or do household chores -- when examined in context -- fails to bolster the ALJ's credibility determination in any way.

The ALJ's finding that plaintiff failed to follow recommended treatment was not a specific,

---

[6] Although the ALJ also cites to page 400 of the Administrative Record for this advice, the Court does not find that advice reflected on that particular page.

clear and convincing reason for discounting plaintiff's credibility.

### 4. Conclusion

Based on the foregoing, the ALJ's credibility determination was not "sufficiently specific" to allow this Court to conclude that the ALJ rejected plaintiff's testimony on permissible grounds and did not arbitrarily discredit her subjective symptom testimony. Brown-Hunter, 806 F.3d at 493 (quoting Bunnell, 947 F.2d at 345-46). Remand is warranted on this issue.

## B. EVIDENCE SUBMITTED TO THE APPEALS COUNCIL

After the ALJ's decision, plaintiff submitted to the Appeals Council an Orthopedic Evaluation conducted by Dr. Ralph Steiger on November 5, 2014, and Dr. Steiger's December 18, 2014, Spinal Impairment Questionnaire, detailing the November 5, 2014, examination and Dr. Steiger's RFC assessment. [AR at 508-28.] The Appeals Council "looked at" this evidence and stated that the case had been decided through January 24, 2014, and the "new information is about a later time . . . [and] does not affect the decision about whether you were disabled beginning on or before January 24, 2014." [AR at 2.]

Under agency regulations, the Appeals Council must consider additional evidence that is new, material, and relates to the period on or before the date of the ALJ's decision. See 20 C.F.R. § 404.970(b)[7]; Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1232-33 (9th Cir. 2011) (remanding to ALJ where it was apparent from Appeals Council's denial of review that it had not considered plaintiff's additional evidence); see also Lamp v. Astrue, 531 F.3d 629, 632-33 (8th Cir. 2008) (remanding where it was not clear from the record whether the Appeals Council had considered plaintiff's additional evidence). New evidence is material if it bears "directly and

---

[7] Title 20 C.F.R. § 404.970(b) provides that "[i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the [ALJ] hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the [ALJ's] hearing decision. It will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record." (emphasis added).

1  substantially on the matter in dispute." Luna v. Astrue, 623 F.3d 1032, 1034 (9th Cir. 2010)
2  (quoting Booz v. Sec'y of Health Human Svcs., 734 F.2d 1378, 1380 (9th Cir. 1984) (citation
3  omitted)).

4  Here, Dr. Steiger's 2014 reports "relate to" the time period considered by the ALJ because
5  they report on the same conditions plaintiff claimed as the bases of her disability and that the ALJ
6  found to be severe impairments [AR at 508-28.] To say that they are not related implies that
7  somehow plaintiff suddenly developed degenerative disc disease, lower back pain, neck pain,
8  knee pain, foot pain, and depression within the nine months between the ALJ's January 2014
9  hearing decision, and the November 5, 2014, evaluation by Dr. Steiger. Such a contention is
10 unsupported by medical evidence and defies common sense. Moreover, Dr. Steiger's reports
11 explicitly address clinical findings based on his own evaluation of plaintiff [AR at 512-18], as well
12 as his review of plaintiff's medical records from the earlier time period [AR at 518-22], and provide
13 a functional assessment based on his evaluation. [AR at 525-28.] Thus, Dr. Steiger's reports
14 relate to the period on or before the hearing decision, and as such should have been considered.
15 See 20 C.F.R. § 404.970(b); supra n.7.

16 Where, as here, the Appeals Council was required to consider additional evidence, but
17 failed to do so, remand to the ALJ is appropriate so that the ALJ can reconsider the decision in
18 light of the additional evidence. Taylor, 659 F.3d at 1233. Indeed, defendant appears to
19 acknowledge that this evidence should have been considered, and conducts its own evaluation
20 of the evidence, arguing that considering the evidence as a whole, "Dr. Steiger's opinion does not
21 change the fact that substantial evidence supported the ALJ's determination Plaintiff was not
22 disabled." [See JS at 24 (citing Brewes, 682 F.3d at 1159-60, 1162-63) (noting that new evidence
23 provided to the Appeals Council is part of the administrative record that this Court "should consider
24 when reviewing the ALJ's decision").] Because the matter is being remanded for the ALJ to
25 reconsider plaintiff's subjective symptom complaints, the Court finds it appropriate for the ALJ on
26 remand to also consider Dr. Steiger's reports to the extent those reports shed light on plaintiff's
27 condition prior to January 24, 2014. [AR at 508-28.]
28 /

**VI.**

**<u>REMAND FOR FURTHER PROCEEDINGS</u>**

The Court has discretion to remand or reverse and award benefits. <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See <u>Lingenfelter</u>, 504 F.3d at 1041; <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See <u>Benecke</u>, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting plaintiff's subjective symptom testimony, the ALJ on remand shall reassess plaintiff's subjective allegations and either credit her testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony. Second, the ALJ shall also consider the medical opinions of Dr. Steiger. [AR at 508-28.] In assessing the medical opinion evidence of all of the doctors, the ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of the opinion that the ALJ discounts or rejects, including a legally sufficient explanation for crediting one doctor's opinion over any of the others. Finally, if warranted, the ALJ shall reassess plaintiff's RFC and determine at step four, with the assistance of a VE if necessary, whether plaintiff is capable of performing her past relevant work as a general clerk and/or as an administrative assistant. If she is not so capable, then the ALJ should proceed to step five and determine, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the regional and national economy that plaintiff can still perform.

## VII.

## **CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: March 28, 2016

*/s/ Paul L. Abrams*
_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE